May it please the court, Victoria Garcia-Cross on behalf of Mr. Morales. The question in this case is whether the district court plainly erred in accepting Mr. Morales's and 5822. It did because there was insufficient evidence in the record proving three elements of that crime. First, that the firearm was illegally made. Second, that Mr. Morales knew that fact and third, that the firearm was made in the United States. Each of these independently qualifies as plain error and I'll address each of them in turn Before moving on to the remaining prongs of plain error. Beginning with the first point, there was insufficient evidence in the record that the firearm was made in violation of 5822 and the court plainly erred in accepting the plea for that reason. Could I ask a quick question? In Laredo, are they doing these magistrate judge hearings now? Is that practice resumed or is that just this is an anomaly where they do the magistrate judge to make the report and then it's accepted by the district court? I thought that they weren't doing that in the southern district at this point. I'm not critical. I'm just trying to . . . I wonder what's happening in Laredo these days. Your Honor, I'm actually, I'm based in Houston and so I do review appeals from Laredo and I see that from time to time. I'm not sure if that is what is happening in every case or if that was a more unusual phenomenon but . . . Okay. Yes. Maybe your colleague on the other side, friend on the other side might know that whenever it gets to be her turn. Thank you. Thank you, Your Honor. So continuing with the first point of error, the plain text of the statutes of conviction require that element that the firearm be made in violation of 5822. 5861C says that it's a crime for someone to receive or possess a firearm that's made in violation of the provisions of the Act, the National Firearms Act. And 58 . . . If your client were to prevail today, then the plea agreement would be busted for lack of a more judicial term and that would open him up to all those counts, right? Certainly, Your Honor. Yes. That is true.  Yes. And the court may have a concern about whether that impact his substantial rights and I'm happy to address that concern if the court has it. The government . . . Please do. Thank you, Your Honor. The government has argued that the fact that Mr. Morales may be guilty of other crimes means that he . . . any district court error wouldn't impact his substantial rights. That's not the case. The Supreme Court said in a law note that it is never held that to satisfy the third defendant actually be innocent and this court in Smith explained that a factual basis error just like this one with respect to a 922-G1 case did impact the defendant's substantial rights in that case. And . . . You don't look at it in context of what could have happened in some other scenario. You only look at it with what . . . on the claim that it's being made. Precisely, Your Honor. The question is whether there's a reasonable probability to believe that the defendant wouldn't have entered this case. And in this case, Mr. Morales could actually be innocent of this crime for the reasons that I'll address and so any error does impact his substantial rights. So moving back to the first point of error, there was an evidence in the record showing that Mr. Morales' firearm, the one he possessed, was made in violation of 5822. Assuming, arguendo, that the record showed that the firearm was made without a serial number, wouldn't Morales' conviction under 5861C still be valid, though? No, Your Honor, because it's a separate crime to possess a firearm that's un-serialized. That's a separate subsection of 5861, it's 5861I. 5861C, the statute of conviction, requires that Mr. Morales . . . excuse me, it requires that the maker of a firearm, to be guilty, that the firearm that was possessed was made in violation of the provision of the Act, 5822, requires that the maker of the firearm apply for permission to make and register the firearm. So they have to send in an application, they have to receive permission to make it, and they have to pay a specified tax. So it's the application, the receiving of permission, and the tax that are at issue in 5822 and 5861C. The fact that the firearm was un-serialized is not really relevant to this question. And here, at the plea call, Mr. Morales admitted to essentially three things. That's at record 94 through 99. Mr. Morales agreed that police had searched his car, they had found an AR-style rifle in the trunk of the car. He agreed that he'd given a post-arrest statement admitting that the firearm was his, he'd purchased it from somebody else about a month prior. And he agreed that agents had verified that, as Your Honor said, the firearm was un-serialized, it was privately manufactured, and it wasn't registered to Mr. Morales. Can we talk about plain error, the prompt to now, for a minute? Certainly, Your Honor. How would it have been plain or obvious to the district court that the firearm being made in the United States was an essential element of the offense? It's not in the text of the statute. And the principle of extraterritorial might not have, the ality might not have been on the tip of the court's tongue or brain at the moment. And besides the Second Circuit, it's not clear that other circuits have held that it's an essential element. So with all of that, how is the error of fear plain? It's plain, Your Honor, because this court has said that for an error to be plain, for a statutory interpretation error like this one to be plain, it has to be either compelled by the language of the statute or by a binding judicial decision. And that is the case here. While the principle against extraterritoriality may not have been at the top of the judge's mind at the time of the hearing, it is set forth in binding precedent in a Supreme Court decision, Arabian American Oil Company. The court clearly held that it is a longstanding principle of American law that Congress's legislation doesn't apply outside of the territorial jurisdiction unless Congress expresses a contrary intent. And there's no indication in the text of the statute that there is such a contrary intent for these statutes of conviction. Besides the Second Circuit, has any other circuit held that the firearm being made in the United States is an essential element? Not to my knowledge, Your Honor. There is a district court decision as well, United States v. Phillips, from the Middle District of Louisiana, that reached the same conclusion as to the same current statute of conviction. And this court in Goodson also held that for the predecessor statute of 5861, so at that time, it did not contain that element. And the court emphasized that the government has to prove that element before it can prove someone guilty of the crime. Counsel, let me go back to the issue, and you spoke earlier on it, and I didn't interject a question, but with regard to the decision to enter the plea to this particular count, have you undertaken an evaluation of what the guideline sentences would be based upon his criminal history category applied to the other three counts? In other words, what was his sentencing risk insofar as the other three counts are concerned vis-a-vis the one for this count? Your Honor, Mr. Morales was charged with four different offenses, and so all of them relate to the same guideline rule. The risk would likely be the same, but that doesn't really impact this court's analysis as to whether this issue impacts his substantial rights, because in Smith, the case that I cited earlier, we faced a very similar situation. The court in that case found that there was an impact on substantial rights because the factual basis in that case was insufficient to support the 922g1 conviction, and it reached that conclusion notwithstanding the fact that the defendant in that case faced two charges, two independent 922g1 charges. He pled guilty to only one of those through a plea agreement, and even absent the appellate court's decision, he would have faced exposure to the same penalty range, to the same offense. The court found that regardless of that, it still was an impact on his substantial rights because absent the district court's error, absent the factual insufficiency of the factual basis, there wouldn't have been, the defendant wouldn't have entered that particular plea, and so that's exactly the situation. Just to make sure I understand your answer to Chief Judge O'Rod's question, what your client seeks is the opportunity, if we were to vacate, he seeks the opportunity to withdraw from his guilty plea, and thus be subject to the four counts go back in time to the day before he entered the plea before the district judge. Precisely, Your Honor. Okay. He does face those other charges still, but we really don't know much about those other charges at this stage. We have the record that we have on appeal, we don't have the discovery, and so we don't know if he has defenses to those other charges. All that we know is that he pled guilty to this offense, he could actually be innocent of this offense. But it could be a big risk to him to proceed. I mean, I'm sorry, one of them's a felon in possession as well, so . . . I'm sorry, Your Honor, I didn't hear. It could be a big risk. It could be a . . . he has to make that decision as whether he thinks that's a . . . he's going to end up with more if he were . . . even if he were successful, and I'm not foreshadowing and anticipating. I don't know. Certainly, Your Honor, and there is that risk whenever a criminal defendant appeals. It is always possible that on remand, if there's a resentencing, the defendant could face a higher guideline range. The court recently held that in the United States v. Garza. He could always face a higher guideline range, he could always receive a higher sentence, but that's not a . . . shouldn't be a concern for this court. The question is whether the district court plainly erred in reaching . . . in accepting Mr. Morales' plea to this particular charge, and it did. I'd like to move to the second point of error that we haven't addressed yet, which is that the district court's decision was also a plain error because there was no evidence in the record that Mr. Morales had the required mens rea to commit this offense. The statute . . . the statutes of conviction don't specifically contain a mens rea requirement, but the Supreme Court and this court have held time and again that for criminal statutes, we presume scienter, even if the statute is silent as to the required mens rea. In Alanis, the Supreme Court held that the defendant generally must know the element . . . the facts that make his crime fit the definition of the offense, and the court specifically held that we should attach the mens rea requirement to each statutory element that criminalizes otherwise innocent conduct. And so in this case, 5861C criminalizes the possession . . . the possession of an illegally made firearm. The mens rea requirement should attach to each of those elements, both the possession and the fact of it being illegally made. It's actually the fact of the firearm being illegally made that is the crucial element that separates innocent from criminal conduct. It is perfectly legal to own and to possess a firearm, even a privately made one, and so it's the fact that it's made in violation of the requirements set forth at 5822 that make this conduct criminal. The Supreme Court in Rahafe and in Staples also emphasized that for criminal statutes that involve high penalties . . . so in those cases, the court dealt with statutes that criminalized conduct and subjected defendants to penalties of up to 10 years, just like this one. So for criminal statutes that have high penalties associated with them, the court should be particularly reluctant to dispense with mens rea. In this case, as I mentioned before, Mr. Morales faced a penalty of up to 10 years for this crime. He received 90 months of imprisonment as a sentence, seven and a half years. So this was not a low-level, regulatory, civil offense. It's a criminal statute with a severe penalty, and for that reason, the court should be particularly reluctant to dispense with the mens rea requirement. The government has suggested that a public welfare offense exception may apply. The court has generally limited that exception to the mens rea requirement to cases where the court was assessing a statute that dealt with a particularly dangerous device or a device that placed somebody in responsible relation to a public danger. That's the language the court has used. So in cases that deal with drugs, as in Balint, or misbranded drugs, as in Doderweick, the court has found it appropriate to dispense with the mens rea requirement, but that's not the case here. The court in Staples emphasized that guns in general are not the kind of deleterious devices or obnoxious waste materials that trigger that exception. So we've discussed the first, second, and third prongs of plain error. I'll move briefly to the fourth. The error in this case is of the type that should trigger this court's corrective discretion. The court in Smith emphasized that the fact that the defendant could actually be innocent of the offenses of conviction is enough to satisfy the fourth prong of plain error. And so just like in Smith, the court in this case should find that the errors warrant this court's corrective discretion. It should vacate the conviction, and it should remand for the court to conduct further proceedings. And so I see my time is about to elapse, unless the court has any further questions. I will conclude it. Thank you. Thank you. Good morning, and may it please the court, Jennifer Weinhold on behalf of the United States. The government will discuss prongs one and two, but from the outset under prong three, the court should affirm Mr. Morales' conviction because he cannot show a reasonable probability that the outcome of the proceeding at the lower court would have been different. Assuming that there was an error which the government does not concede, Mr. Morales does bear the burden of showing that he would not have pled guilty. Mr. Morales fails to meet his burden as he puts forth only a bare assertion that the facts contained in the record, quote, do not prove that he was guilty of the crime of conviction. And that was at appellant's brief 30. First, the Fifth Circuit is unequivocal that conclusory assertions that the defendant would not have pled are insufficient to satisfy this third prong of plain error review. Don't you agree though that under the Smith case and others that we don't consider the other charges in the determination in the prong three analysis? We only consider whether he would have pled guilty to this particular charge. But specific, well, Your Honor, under Smith, that was the sole count in the indictment and the option then was that he would, here Mr. Morales would be proceeding to trial. So his option is that he is looking at four other counts where on one of the four counts the penalty is, the penalty exposure is much higher than on the count of conviction. What case says that you look at the other counts in determining that rather than only at the count and whether or not you would have pleaded guilty to that count? Your Honor, in United States v. Freeman, there were several counts of conviction where there were other, where the court was obligated to look at those other counts and looked at whether the defendant would in fact have proceeded to trial or pled guilty. And so I think given that there is additional exposure for Mr. Morales here, in so far as count four subjects him to a higher penalty, counts two and three subject him to the same penalty, but he's certainly subjected to a more severe penalty on count four. And if he were to proceed to trial, he would be convicted on numerous counts where the sentencing could in fact be stacked. And so I think it's unlikely, Your Honor, that Mr. Morales would have proceeded to trial and risked that additional exposure on the three remaining counts. And that was what case you cited? Your Honor, it was United States v. Freeman. Freeman case. But yes, where is that in your brief? And I do believe, Your Honor, and I can supplement. Where is that in your brief? I think I would need to supplement with a Rule 28J. You did not cite that case that the case that you want us to rely on today is not cited in your brief. Is that correct? Correct, Your Honor. Did you know you were going to argue that case today? I'm sorry, I didn't. Did you know you were going to raise that case as the basis for your prong three, which you believe is your strongest argument? Your Honor, my understanding was that that case specifically, I did look at that case prior to coming, and I can supplement with a Rule 28J letter. My question was, if you knew of it ahead of time, shouldn't you have had a responsibility to tell your friend on the other side that, hey, I found this really great case, it's not in my brief, and I think it really devastates your case, and here it is, and you need to know because I'm going to talk about it today. Did you do that? Your Honor, I did not do that candidly. Should you have done that? I should have done that, Your Honor. And I do apologize candidly. I think my inexperience is shining through insofar as this is the first time I have done an appellate brief and argued before this court. Well, then the proper thing is to do a 28J letter, as you've offered, and you may do that within three business days, and then within six business days, you may file a responsive 28J with any cases that you wish to cite on the point. And thank you for your candor. Thank you, Your Honor. And specifically, Your Honor, I do believe that given that there is the additional penalty exposure on count four, it would be unlikely that Mr. Morales would have proceeded to trial. That being said, Your Honor, I think that there was no error insofar as there certainly was no clear and obvious error. I think on the count of conviction specifically, what we have here is that on the count of conviction, the government needed to prove that there was knowing possession of the firearm that was made in violation of the act. We know that Mr. Morales possessed the firearm and that he knew he possessed the firearm. The record is replete that he time and time again said that he bought the firearm from another crack addict on the street and that the firearm was, in fact, his firearm. And so we do know that, Your Honor, that he had knowing possession of the firearm. The fact that it was a National Firearms Act firearm was made replete throughout the record as well. It was a short barrel rifle that was less than sixteen inches. It measured specifically eight and three-quarter inches. I think during the plea colloquy specifically, the magistrate judge asked if he knew whether the barrel was eight and three-quarters inches, and he said, yes, Your Honor. And she said, you knew that fact, and that was at record ninety-eight. And so he did know of the features of the firearm that had it fall within the ambit of the act. And so specifically, the record, the factual basis in the record shows that he knew he had the firearm, he knew of the features that brought it within the ambit of the act, and then finally, with respect to whether it was made in violation of the act under 5822, I think the record is clear that it was made in violation of the act. Specifically, serialization is a condition precedent to making the firearm under 5822 subsection C. Specifically, the statute says that the maker of the firearm needs to identify the firearm as prescribed by the statute itself. And the serialization is codified at 5842 specifically, where it says that anyone making a firearm shall identify each firearm made by a serial number. And so that shall language is not permissive. The firearm needed to be identified with a serial number, and given that it was not identified by a serial number, there was no way for that to be put in the application for the making of the firearm in the first instance. And the catch-all under 5822 says that any application that would put the maker or the possessor in violation of the law, there under the attorney general would deny that application. And so the fact that the firearm was not serialized, that application would not have been granted. So I think the condition precedent of the serialization makes clear that it was a firearm made in violation of the act. So the Supreme Court has held that a conviction for possessing an unregistered firearm does not actually require the defendant to know that the firearm was unregistered, correct? Yes, that's correct, Your Honor. So why wouldn't that logic apply here? That's a fairly friendly question. Your Honor, I do agree that it applies here. I don't think that the mens rea requirement extends to that third element of 5822. I don't think that Mr. Morales had to specifically know of all of the minutia under 5822, all five of those... all five of the minutia at 5822 specifically. Really, what the government is arguing is that he needs to be aware of the fact that bring him within the ambit of the act. And he knew that there was... that the gun itself was not serialized, which he actually acknowledged on the record during the plea colloquy and certainly did not object to the prosecutor's recitation of the fact. What about the made in the USA? Is that an essential element? Your Honor, I don't believe the plain language of the statute makes clear that it does need to be made in the United States. The precedent relied on by counsel in United States v. Goodson was a predecessor version of the statute and specifically in Goodson, the court relied on the fact that the prior version of the making tax did require that the firearm itself be made within the United States. Language that was notably absent when the Gun Control Act and the National Firearms Act was amended in total in 1968, Your Honor. So with that, I think given the fact that there is no plain language in the statute that the firearm need to be made in the United States, the government did not need to prove that, Your Honor. And so certainly the fact that there... the only precedent that my counterpart cited with respect to the firearm being made in the United States was the Second Circuit in United States v. Savino, which is not binding precedent. Here, Your Honor, I do not believe that the statute makes clear that the government needs to prove the firearms making in the United States. But you don't think on prong one it's required, but certainly you don't think on prong two it's been established. That's correct, Your Honor. Under prong one, yes, that is correct, Your Honor. Okay. Moving on, Your Honor, with respect to the mens rea specifically, I know we addressed that briefly. The ESMA, as Ms. Garcia-Cross acknowledged, there is no express scienter requirement within 5861C. Certainly, Staples has opined on the mens rea requirement as it relates to 5861D. That being said, there is no express scienter requirement as it relates to 5861C, and this court has not opined on what the mens rea requirement would be. For that fact alone, there is no plain error with respect to the district court in inquiring further about Mr. Morales' mens rea as it related to the firearm being made in violation of the Act. That being said, I do think the factual basis does establish a heightened mens rea insofar as we spoke earlier about the fact that there were several facts that were brought up in the plea colloquy and also at the factual basis that Mr. Morales knew of the features of the firearm that brought it within the ambit of the Act, specifically under 5845 subsection A3. The term firearm is defined as a legal term of art, and a rifle having a barrel of less than 16 inches does bring the firearm within the ambit of the Act. So with that, Your Honor, I do believe that the heightened mens rea is shown with respect to Mr. Morales and his possession of the National Firearms Act firearm. That being said, the Supreme Court has only opined as to staples, Your Honor, so specifically 5861D. I think it's instructive, much like it was instructive in Trejo. United States versus Trejo was dealing specifically with the money laundering statute, and under 1956A2A, when it was dealing with that part of the statute, it looked as to whether the rigorous mens rea needed to be applied to another subsection of the statute that had not been considered in the Fifth Circuit. And ultimately, the court found that there was no clear and obvious error because they had variously described Trejo's claim as one that was novel and not entirely clear under existing case authority. And so given that it was- If you were to prevail on the prong two point and then not foreshadowing, would you want the court to address the prong one? Are we likely to see other cases in this area? Your Honor, I think the court- We would need to have clarity in the prong one of whether or not it is what the requirements are. I certainly believe that United States versus Staple is persuasive authority and instructive, but I do think that this case can be decided solely on prongs two and three, and that the court does not need to reach prong one. That's what I'm asking. Would it be helpful to the jurisprudence for the court to reach prong one or not? I think it would- We might have other cases where there's some issue as to what the elements are. I do think it would be- I didn't mean to cut you off, Your Honor. I do think it would be instructive insofar as 5861D, it's almost identically worded. It's certainly similarly worded to 5861 subsection C, and the Supreme Court has opined on the mens rea that is sufficient or the requisite mens rea that needs to be read into the statute, and so I do think that it would be instructive to understand what the government needs to prove under 5861C. I think the plain language of the statute makes clear that it's governing firearms that fall within the ambit of the National Firearms Act, and so the features of the firearm, the government, Mr. Morales did know of those features and needs to know of those features, Your Honor. You seem to have some knowledge by your body language about the question I asked your friend on the other side at the beginning about what are the practices in this part of the Southern District of Texas. Do you have knowledge on that? Your Honor, I am fairly new to Houston as well. I did do a week-long detail to the Laredo office, and I do know that the magistrate judges are being referred. Please, and are taking changes of plea from defendants given the voluminous nature of the docket in Laredo. And they do have a voluminous docket there. They do. Thank you. I see that my time is running. Pending any further questions from this court, I submit on the briefs, and I just wanted to say as one final point, with respect to prong four, I do not believe that this court needs to exercise its discretion with respect to... Because there was no grave injustice, no grave injustice occurred insofar as the record establishes that Mr. Morales possessed a firearm that was made in violation of the act. And so I do not believe that corrective action or discretion is warranted. Thank you. Thank you.  On rebuttal, I'd like to address a few different arguments raised by the government and concerns raised by the court. First, the court asked why wouldn't the mens rea requirement that applied in Staples, why wouldn't that same mens rea requirement apply here? And the answer is because Alanis requires a different result here. As I said, the Supreme Court in Alanis explained that the mens rea requirement should attach to each element, criminalize each statutory element, criminalizing otherwise innocent conduct. And here we have these two statutory elements, the possession of a firearm and the possession of a firearm that was illegally made. The mens rea requirement should attach to both. This is different than Staples. The court also asked about prong two, suggesting that it had some concerns about whether this error was clear and obvious under the case law. This court has said many times, and specifically in Smith, that a particular legal question need not have been precisely resolved by a prior Fifth Circuit case in order for an error to be clear. For a statutory interpretation error to be clear, the error has to be clear and obvious, but it can be clear and obvious based on the plain language of the text or based on binding Supreme Court or binding Fifth Circuit precedent. Well, but here we don't have the text and we don't have binding Fifth Circuit precedent. Your Honor, with respect to the first point of error, we do have clear text. But not on the United States point. It is a bit more complicated when we come to the second and the third points of error, the mens rea issue and the made in America issue. But at least as to the first issue, whether the firearm was, whether there's evidence that the firearm was made in violation of 5822, it's clear the statute requires that. And it's also clear from the factual basis that we don't have those facts. Mr. Morales admitted at the plea colloquy just that he possessed the firearm. The district court asked him at Roe 98, and so you knew that you had a privately manufactured AR-style short rifle with you. You knew that? And Mr. Morales said, yes. It's not clear whether he was admitting that he knew he possessed the firearm or whether he knew that he possessed the illegally made gun. And there's also no information there about the circumstances in which the firearm was made. No serial number, and he knew the size? Yes, Your Honor, but Section 5822 requires the maker of the firearm to do a number of things, to send in this application, to register and make the firearm, to receive permission, and to pay a tax. Nowhere in the factual basis, any of the facts in the record, is there information about the maker of the firearm or what that person did. Mr. Morales admitted that he had the gun, he bought it off of somebody in the street. He was not the maker. There was no evidence about the maker, and we needed that evidence in order to satisfy that element of the offense. And so that is plain error. Even if this court doesn't agree that the other points of error raised by Mr. Morales qualify as plain error, certainly the first error is plain. One final point that I wanted to raise is regarding the third prong of plain error. The government, again, emphasized that because Mr. Morales could be guilty of other offenses, he hasn't met his burden on the third prong of plain error. We agree it's Mr. Morales' burden to satisfy that prong. He has satisfied it here. In Smith, the court emphasized that a factual basis error is sufficient to satisfy the third prong of plain error, and as the court referenced, we look at whether the evidence in the record was sufficient to prove the offense of conviction. We don't look at other underlying charges that were raised in the indictment. I wanted to clarify something that was discussed by the government. The defendant in Smith actually faced two counts in the indictment. It wasn't a one-count indictment, and that's clear in the dissent, the dissenting opinion in Smith. There were two 922g1 charges that were raised in the original indictment in that case. They were independent 922g1 offenses, and so, again, regardless of what the court of appeals decided as to the 922g1 offense that was the subject of the appeal, he still faced exposure to the same, to another 922g1 offense which involved the same penalty range. Theoretically, or presumably, the guidelines would have been the same for him in that case, too, and so that's the same in this case. Mr. Morales was originally charged with four offenses. All four offenses go back to the same guideline provision, and so the fact that he could be theoretically guilty of other offenses is not something that undermines his argument as to the third prong of plain error. I want to emphasize again that the record in appeal doesn't contain all of the discovery. He could have defenses to those other offenses of conviction, and he should have the chance to go back to the district court and proceed in that way. I see my time has elapsed. Thank you, Your Honor. We ask the court to vacate the conviction and to remand. Thank you. We appreciate the helpful arguments in this case, and we also appreciate the opportunity to sit with our learned colleague, Judge Guidry, from the Eastern District of Louisiana by designation this week, and the court will now stand adjourned pursuant to the usual order. Thank you.